CHARLES H. FISKE *vs.* ANNE S. BANFIELD & others.

Suffolk. December 2, 1891. — January 8, 1892.

Present: HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Will — Devise in Trust — Residuary Clause.*

A testator, by his will, created a trust fund for the benefit of eight nieces, each of whom was to receive one eighth of the income during her life, providing upon the death of any niece that "the eighth part so bequeathed to her shall be thereafterwards paid over or held in trust for my grandchildren, in the manner provided hereinafterwards as to the residue of my estate." The residuary

clause directed that "all the rest, residue, and remainder" of his "property, as also the remainders after the termination of the aforegoing life estates and interests," be "held in special trust" for his two granddaughters, who were sisters, "the whole of the trust fund" for one of them being described in one place as "one half of my whole estate," and the portion which the issue of one was to receive upon the death of the other without leaving a will or issue as "the other half part of the trust estate." Each grandchild was given the power to dispose of the share held in trust for her. After the death of three of the nieces, one of the granddaughters died without issue, having exercised her testamentary power of disposal, and subsequently another of the nieces died, leaving the other granddaughter her surviving. *Held,* that one half of the eighth held in trust for the niece who died last passed to the devisees of the deceased granddaughter, instead of being held in trust for the surviving granddaughter.

BILL IN EQUITY, filed in this court on June 18, 1890, by the trustee under the will of David Vinal, for instructions as to the disposition of a trust fund. The case was reserved by *Knowlton,* J., for the consideration of the full court, and was as follows.

David Vinal died in 1854, and in his will, dated October 4, 1847, after giving in the first and second articles thereof certain real estate to a sister and a niece for life, directed in the third article that certain other real estate be "held in special trust for my eight nieces, to wit, Antoinette D. G. Field, Mary Beck, Augusta Beck, Martha Ann Beck, Mrs. Harriot Bryant, Mrs. Eunice Bricker, Mary Bowker, and Mary Sutton Vinal, in the manner following : my executor to collect the rents and profits from time to time, and pay over the net amount thereof to my said eight nieces in equal shares, one eighth part thereof to each niece during the natural life of each; upon the decease of any of my said nieces, the eighth part so bequeathed to her shall be thereafterwards paid over or held in trust for my grandchildren, in the manner provided hereinafterwards as to the residue of my estate, the payment to each niece to be made to her solely, or applied to and for her own separate use, and upon her personal sole receipt or order, without claim or interest of any husband or any other person."

The fourth article contained directions as to paying the net income only of the real estate to such sister and nieces, and as to building upon a portion of such real estate.

The fifth article was as follows :

"All the rest, residue, and remainder of my property, as

also the remainders after the termination of the aforegoing life estates and interests, I direct to be held in special trust for my granddaughters, Helen Maria Fiske and Anne Schofield Fiske, in the manner following, to wit: — My executor shall collect the rents and profits, income and interest, and pay the net amount to them in equal shares for and during their natural lives, but only upon their personal and separate receipts or orders, without claim, control, or interest of any husband or of any other person whatsoever. Until each granddaughter attain the age of twenty-one years or shall marry, (whichever first may happen,) so much of her net income as shall not be required for her necessary and proper expenditure shall be applied for the improvement of the trust estates, or otherwise invested, as my executor may deem best, my preference being that it be expended in building upon any vacant land that may be profitably so used, thereby increasing the principal of the trust property. In case of the death of either granddaughter without leaving issue surviving her, (excepting in case of her last will made as hereinafter provided,) the whole trust estate shall be thenceforward held in trust for the surviving grandchild, in manner as if she alone had survived me. Upon the death of either grandchild leaving issue surviving her, the whole of the trust fund for such grandchild; that is to say, one half of my whole estate if her sister be surviving or have deceased leaving issue or will, and the whole if her sister have before deceased without issue or will as aforesaid, shall be paid over or conveyed by my executor to her such surviving issue, to be henceforth free and discharged of all trusts, to the heirs and assigns of such issue forever. If the then surviving sister die without issue or will as aforesaid, the issue of such deceased sister shall at her decease receive the other half part of the trust estate, free and discharged of all trusts, to their own use and that of their heirs forever. Either of my said grandchildren, after having fully attained the age of twenty-one years, may by her last will and testament, executed according to the common form then used in the State of Massachusetts, dispose of the estate and property held in trust for her by the executor, but only in the case of her decease leaving no issue surviving her. In case of the decease of both my granddaughters, without leaving issue surviving, then I give the whole trust

estate and property (excepting such parts and portions thereof as shall be otherwise disposed of by the wills of my said granddaughters or of either of them) to such females as shall be my next of kin (of my own blood) living at the decease of the last surviving granddaughter, to my said female relatives and their heirs and assigns forever."

By a codicil dated the same day as the will, the testator provided as follows:

" 2. As the certain descent of property to children, without any power in the parent to control it, is often a great injury to the parent's influence and their own character, I therefore now cancel and revoke the conditions in my will by which my granddaughters were disabled from disposing of the trust fund by will, if leaving any issue; and I give them and each of them full power to dispose of the whole fund held for them respectively at their decease, by will or writing testamentary executed by the sole and personal signature of said granddaughter in the manner in the aforegoing will prescribed, notwithstanding any coverture, and whether leaving issue or not."

Helen Maria Fiske and Anne Schofield Fiske, the testator's granddaughters mentioned in the fifth article of the will, became by marriage Helen Jackson and Anne S. Banfield respectively. Three of the nieces of David Vinal, mentioned in the third article of the will, died before the year 1885, and Mrs. Jackson died without issue on August 12th during that year, and by her will, which was executed as provided in the will of her grandfather, David Vinal, " devised all her real estate of which she might die seised and possessed, or of which she might have the power of disposal by will under the will of her grandfather, . . . in trust for the benefit of her four nieces, children of her said sister, Anne S. Banfield." Antoinette D. G. Field, another niece of David Vinal mentioned in the third article of his will, died on August 23, 1889, leaving five of his eight nieces therein mentioned still surviving her.

The defendant Anne S. Banfield contended that the whole of the income of the eighth part which was payable to Antoinette during her life was to be held in trust for herself, and that the income thereof belonged to her.

The devisees of Helen Jackson, who were the other defendants, contended that one half of such eighth part passed under

her will in trust for their benefit, subject only to the life estate of Antoinette, being estate of which Mrs. Jackson had the power of disposal.

C. H. *Fiske, pro se,* read the papers in the case.

E. H. *Bennett,* for Mrs. Banfield.

H. J. *Fuller,* for the devisees of Mrs. Jackson.

BARKER, J. The case arises under the will and codicil of David Vinal, who died in 1854. He directed certain real estate to be held in trust for eight nieces, the executor to pay the net income to them in equal shares, one eighth to each during her natural life, and upon the death of any niece thereafterwards to hold or pay over that eighth part in the manner provided for the residue of his estate. The residuary clause directed certain property to be held in trust for two granddaughters, sisters of each other, during their lives, and gave each a power to dispose by will of the property held in trust for her, and made other dispositions of the trust estate if not so disposed of. One of these granddaughters died testate and without issue on August 12, 1885. Three of the eight nieces died before that date, and another died on August 23, 1889. The other granddaughter is living. The question for decision is, whether one half of the eighth held in trust for the last mentioned niece passed to the devisees of the deceased granddaughter, or whether the whole of it is to be held in trust for the surviving granddaughter.

The surviving granddaughter, who now contends that the whole of the eighth in question shall be held in trust for her, is now Mrs. Banfield. Mrs. Jackson was her sister, and it is contended, on the other hand, that under her will one half of the eighth part passed to her devisees free of trust. The contention of Mrs. Banfield is, that the clause of the third article which directs that upon the decease of any of the eight nieces " the eighth part so bequeathed to her shall be thereafterwards paid over or held in trust for " the grandchildren, necessarily implies that up to the time of the decease of the niece the part has not, until the deaths of the nieces respectively, been held in trust for the grandchildren, and therefore does not come within their power of disposal by will. From this it would follow that no part of the eighth now in question was ever held in trust for Mrs. Jackson, and could not be disposed of by her will.

This seems to us too narrow and strained a construction, and one which, if followed in all the contingencies which might occur, would lead to results which the testator could not have intended. In the first place, this construction would work an unequal division of the testator's estate between the issue or devisees of the two grandchildren. But the scheme of the whole will is, that, in the end, one half of the testator's whole estate should pass to the issue or devisees of one granddaughter, and the other half to the issue or devisees of the other. This is apparent from the clause of the fifth article which speaks of " the whole of the trust fund for such grandchild " as " one half of my whole estate," and the clause which speaks of the property which the issue of the grandchild first to die are to receive at the death without issue or will of the surviving grandchild as " the other half part of the trust estate." In the next place, this construction would in a not impossible contingency leave the remainder after the death of some or all of the eight nieces entirely undisposed of by the will. For if the remainders did not form part of the residuary estate from the time of the testator's death, and become part of the property held in trust for the grandchildren only at the death of the nieces respectively, if both grandchildren should die before the death of any niece, the eighth held for that niece would never become part of the residuary estate, and never be held in trust for either grandchild, so as to pass at her death to her issue or devisees, and so would be in fact undevised property. In the next place, as the whole fund put in trust for the grandchildren was to be held during their joint lives, no eighth held for a niece could at the death of a niece be " paid over," unless a grandchild had before died. The direction " thereafterwards " to pay over or hold in trust for the grandchildren therefore necessarily implies that the issue or devisees of a deceased grandchild are interested in such an eighth, for under no other theory could it be " paid over " at the death of a niece.

If, however, we accept the theory that the testator intended to place the remainders after the life estate of the eight nieces in the trust for his grandchildren created by the fifth article, in which he directs " all the rest, residue, and remainder " of his " property, as also the remainders after the termination of the

aforegoing life estates and interests, . . . to be held in special trust" for them, there is no difficulty. The words designating the property which he directs to be so held are as apt to include these remainders as the other remainders which Mrs. Banfield concedes are so included. Her whole contention rests upon the construction which she puts upon the clause of the third article which directs that upon the death of any of the eight nieces the part bequeathed to her shall be thereafterwards paid over or held in trust for the grandchildren. But that clause, without rejecting any part of it, may be construed as simply a reference to the residuary clause for the disposition of the eighths as they should successively fall in upon the deaths of the nieces, leaving such disposition to be governed entirely by the residuary clause. In our opinion, this is the true construction, rather than that which makes them an awkward attempt to create contingent remainders, for no purpose consistent with the testator's general scheme for the disposition of the estate.

As there is no question that the will of Mrs. Jackson was a good exercise of her power of disposal, we are of opinion that one half of the eighth passed to the devisees under her will, and that the other half is to be held in trust for Mrs. Banfield for her life.        *Decree accordingly.*